JAMES S. CARRADINE, Respondent, *v.* HORACE S. HOTCHKISS et al., Appellants.

*It seems* a party is not bound to read a paper in evidence simply because it was produced by the opposite party on the trial at his request and was inspected by him.

Where a witness called by defendant had testified to a transaction between himself and the plaintiff without claiming any failure of memory on his part as to what was said and done, and after testimony on the part of plaintiff in rebuttal, the witness was recalled and identified a memorandum which he testified was made on the same day of the transaction, but not in the presence of plaintiff, the memorandum was, on objection, excluded, *held,* no error; that defendants having given their evidence on that branch of the case and rested, the reception of further evidence was discretionary with the court; also, that the memorandum was not competent as evidence.

Reported below, 23 J. & S. 190.

(Argued June 12, 1890; decided June 27, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made January 21, 1886, which affirmed a judgment in favor of plaintiff entered upon the verdict of a jury.

The nature of the action and the material facts are stated in the opinion.

*T. Henry Dewey* for appellants. The rule that the calling for the production of papers and inspecting them makes them evidence does not obtain in the state of New York. (Abb. Tr. Br. 89; *Kenny* v. *Van Horn,* 1 Johns. 394;

*Stalker* v. *Gaunt*, 12 N. Y. Leg. Obs. 124; *Sayer* v. *Kitchen*, 1 Esp. 210; *Carr* v. *Gale*, 3 W. & M. 38, 59; *Austin* v. *Thompson*, 45 N. H. 113, 117; *Withers* v. *Gillespie*, 7 S. & R. 14; 2 Phill. on Ev. 537; 1 Greenl. on Ev. § 563, note 3; *Coote* v. *Bk. U. S.*, 3 Cranch. 350·; *Waller* v. *Stewart*, 4 id. 532; *Jordan* v. *Wilkins*, 2 West. 482, 484; *Blake* v. *Russ*, 33 Me. 360; *Randall* v. *C. & D. C. Co.*, 1 Harr. 233, 284; *Clark* v. *Fetcher*, 1 Allen, 53, 54; *Long* v. *Drew*, 114 Mass. 77; *Wooten* v. *Nall*, 18 Ga. 609; *Anderson* v. *Root*, 88 S. & M. 362.) Whatever may be the rule as to the right of the party producing a paper upon notice, to offer it in evidence, or to require the party calling for it after an inspection to put it in evidence, it has never been claimed that evidence which is utterly immaterial could be, or be required to be, put in. (Abb. Tr. Br. 89; *Wilson* v. *Bowie*, 1 C. & P. 10; *Hylton* v. *Brown*, 1 Wash. C. C. R. 343; 2 Phil. on Ev. 537; *Withers* v. *Gillespie*, 7 S. & R. 460; *Clark* v. *Fletcher*, 1 Al. 63.) The rule contended for does not apply to a paper incidentially produced on a trial. (*Withers* v. *Gillespie*, 7 S. & R. 14; 2 Phil. on Ev. 537n, 460; *Austin* v. *Thompson*, 45 N. H. 118.) The reception of illegal evidence is presumptively injurious to the party objecting to its admission. (*People* v. *Gonzales*, 35 N. Y. 49; *Vandervort* v. *Gould*, 36 id. 639, 644; *Anderson* v. *R., W. & O. R. R. Co.*, 54 id. 341, 344; *Foote* v. *Becker*, 78 id. 155; *Bragen* v. *Lord*, 67 id. 495; *Baird* v. *Daly*, 68 id. 547; *Baird* v. *Gillett*, 47 id. 186; *Havemeyer* v. *Havemeyer*, 11 J. & S. 506; *Hydorn* v. *Cushman*, 16 Hun, 107; *Yates* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 100; *Gillett* v. *Mead*, 7 Wend. 193; *Clark* v. *Vorce*, 19 id. 232; *Underhill* v. *N. Y. & H. R. R. Co.*, 21 Barb. 489; *Coleman* v. *People*, 58 N. Y. 555; *O'Hagan* v. *Dillon*, 76 id. 170; *Worrall* v. *Parmelee*, 1 id. 519; *Green* v. *Disbrow*, 56 id. 354; *Neudecker* v. *Kohlberg*, 81 id. 296.)

*Charles H. Kitchel* for respondents. If there is any evidence upon which the finding of the jury can be sustained, an

appellate court is not warranted in reversing upon the sole ground that in its opinion the trial court should have reached a different conclusion upon conflicting evidence. (*Parker* v. *Jervis,* 3 Abb. Ct. App. Dec. 453; *Kerr* v. *McGuire,* 28 N. Y. 446; *Sanford* v. *E. A. R. R. Co.,* 23 id. 343; *Baird* v. *Mayor, etc.,* 96 id. 576; *Nicolay* v. *Unger,* 80 id. 56, 57.) A party obtaining an instrument from his adversary by notice to produce, and examining it, cannot examine a witness on it, if he will not offer it in evidence. (*Hotchkiss* v. *G. F. Ins. Co.,* 5 Hun, 91; *Mead* v. *Shea,* 92 N. Y. 126; *Day* v. *Roth,* 18 id. 448; *Clark* v. *Fulcher,* 83 Mass. 57.) The letter from Blanchard to plaintiff was admissible. (*Eldridge* v. *Haslett,* 33 Penn. 307; *Simmons* v. *Hass,* 11 N. Y. S. R. 846; *Neil* v. *Thorn,* 84 N. Y. 270; *Marvin* v. *U. L. Ins. Co.,* 88 id. 278.) If the letter was immaterial, although it might have been illegally admitted, it is no ground of reversal. (*Platt* v. *Thomas,* 33 Wkly. Dig. 530.)

HAIGHT, J. This action was brought to recover damages by reason of the refusal of the defendants to deliver to the plaintiff 500 shares of stock known as St. Louis common or nickel plate, which the defendants, as brokers, had purchased for and on account of the plaintiff.

On the 23d day of November, 1886, the plaintiff demanded of the defendants the delivery to him of the stock in question, at the same time tendering to them the sum of $3,418.23, which he claimed was the whole amount due on his account. The defendants refused to deliver the stock, claiming that there was due them on the account the sum of $7,530.73. The only dispute between them arose out of a transaction in Richmond Terminal stock. On the nineteenth of November, prior to the demand to which we have already alluded, the defendants sold short on the plaintiff's account 200 shares of Richmond Terminal stock at fifty-eight and seven-eighths, 100 shares at sixty and 100 shares at sixty-three. This transaction resulted in a loss which constitutes the difference between the parties. The business was transacted on behalf of the defend-

ants by one Frank E. Blanchard, their agent, who testified that the plaintiff authorized him to sell Richmond Terminal stock short and to buy the same in at his discretion when he thought the proper time had arrived, and that the sales were made under the discretion so given by the plaintiff. The plaintiff denied that he ever gave Blanchard such authority, and repudiated the sales made on his account, and this was the only question tried.

Upon the trial the plaintiff testified, in answer to questions by the defendants' counsel, that Mr. Blanchard wrote him on Monday to the effect that the stocks were going up. This letter was produced on the request of the defendants' counsel. Thereupon the plaintiff's counsel demanded that the letter be put in evidence, the defendants having called for it and read it; the court ruled that the letter, having been called for by defendants' counsel, and inspected, should be put in evidence; the defendants' counsel objected to putting it in, and asked the judge if he ordered him to put it in; the court replied in the affirmative, and thereupon defendants' counsel took an exception to the ruling, and then, in obedience to the direction of the court, read the letter to the jury.

Whatever may have been the ancient rule in England upon the subject, we do not understand that the ruling of the court can be sustained under any rule now existing in England or in this state. (*Gordon* v. *Secretan*, 8 East. 546; *Kenny* v. *Clarkson*, 1 Johns. 385, 395; 2 Phill. on Ev. 537.)

But we fail to see wherein the defendants were harmed or prejudiced by the reading of the letter. The letter was addressed to the plaintiff, dated November 15, 1886, and is as follows:

"DEAR SIR—I asked Mr. Lord to see his friend who is manipulating Richmond Terminal Stock. He saw him this morning and was told to buy the stock to-day and by no means sell it short. This information is from the party who has put the stock up, and I submit it to you to act upon as you think best.

"Very respectfully,

"F. E. BLANCHARD."

The plaintiff had previously sold 600 shares Richmond Terminal stock short at fifty, and, after the receipt of this letter he ordered Blanchard to buy in that amount, which was done at fifty and a half. He also claimed to have given Blanchard an order to buy 600 shares more on the fifteenth, which appears to have been misunderstood by Blanchard, he only purchasing 600 to make good the amount that the plaintiff was short. The next day, the sixteenth, the plaintiff and Blanchard had an interview in reference to the purchase ordered the day before and of the failure of Blanchard to comply with the second order given. The stock had in the meantime gone up and the plaintiff expressed his displeasure and disappointment at Blanchard's failure to comply with his order. It was at the close of this interview that Blanchard claims the discretionary order was given him to sell short when the proper time arrived. Blanchard, in delivering his direct testimony, stated that on the fifteenth he sent a letter to the plaintiff saying that he had heard that Richmond Terminal stock was to be put considerably higher by the pool manipulating it. The plaintiff had also testified to the receipt of the letter from Blanchard, and that it was to the effect that the stocks were going up, so that the contents of that letter was previously made to appear by the testimony of both Blanchard and the plaintiff. It is true it contains the statement—not mentioned in the oral testimony—that "I submit it to you to act upon as you think best," but of what importance or materiality is this statement as bearing upon the question tried? It is suggested by one counsel that it tended to disprove the claim of Blanchard that he had a discretionary order, but this statement can have no such effect, for the letter was written on the fifteenth of November, and the discretionary order testified to by Blanchard was given on the day following. So that there is nothing in the letter that is in conflict with the defendants' theory of the case, or that could possible prejudice him before the jury upon the question submitted for its determination.

Shortly before the trial closed the defendants' counsel produced a paper which he identified from the testimony of Blanchard as a memorandum made at the Fifth Avenue Hotel, on the afternoon of the day that the discretionary order was given by the plaintiff to Blanchard, and offered it in evidence. It was objected to by the plaintiff upon the ground that it was incompetent and should have been produced in the first place. In answer to a query by the court it was conceded that the memorandum was not made in the presence of the plaintiff. Thereupon the court sustained the objection, and, we think, properly. The defendants had given their evidence upon this branch of the case and had rested. It was consequently, discretionary with the trial court as to whether it should again open the case to receive further evidence upon this subject; but we do not understand the memorandum to be competent as evidence in chief. Blanchard had already testified to the conversation that took place between himself and plaintiff at the time that he claimed the discretionary authority was given to him to purchase and sell the stocks on plaintiff's account. He did not claim that there was any failure in his memory as to what was then said and done. If there had been a failure in memory on his part and if he had made a memorandum of the conversation at the time, the trial court might have permitted him to look at the memorandum for the purpose of refreshing his recollection and then to testify as to what was said and done by the parties.

We have examined the other exceptions appearing in the appeal book, but are of the opinion that they are correctly answered by the court at General Term.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.